UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-CR-20780-SCOLA

**UNITED STATES OF AMERICA,**

vs.

**EDDY UBALDO MARIN,**

      **Defendant.**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

This is Eddy Ubaldo Marin's third sentencing in our district in less than ten years. First, Marin helped a notorious Ponzi ringleader launder his ill-gotten gains from the federal Government by, among other things, testifying falsely under oath at a federal bankruptcy deposition, and was sentenced by District Court Judge Marra for obstruction of justice. Second, Marin ripped off investors in a pump and dump stock swindle the entire time he was out on bond, incarcerated, and on supervised release in the case before Judge Marra. Instead of facing the music for this securities fraud, Marin fled before his sentencing in that case in front of Judge Gayles and was sentenced in absentia to 210 months. Now, Marin will be sentenced before this Court for flouting his bond conditions and the order of Judge Gayles to report for his sentencing.

Prior to these three felonies, in 1991, Marin was sentenced in the Middle District of Florida for his involvement in a cocaine conspiracy. Marin then violated his supervised release in that drug case in 1999, when he was indicted in our district for a money laundering conspiracy before District Judge Middlebrooks (a case where he was sentenced and, again, violated his supervised release). In the past 22 years, Marin committed five federal felonies, violated supervised release three times, obstructed justice (and committed perjury), and spent over two years as a fugitive.

All of these crimes have one thing in common: Marin is willing to lie to members of this judiciary about his willingness to comply with their rules and orders. While it remains to be seen whether any sentence will promote Marin's respect for the law, a consecutive sentence of 48 months – roughly twice the time Marin was a fugitive – is a start.

## INTRODUCTION

### Marin's Drug Convictions and Check Cashing Scam

Marin started with cocaine. In 1990, after some minor state drug cases, Marin was indicted federally in the Middle District of Florida for conspiracy to possess cocaine with an intent to distribute. *See* PSR ¶ 27. In 1997, after serving a 57-month sentence on the cocaine conspiracy charge, and at the tail end of his 5-year supervised release term, Marin was indicted for the first time in our district for what a appeared to be a fairly routine check cashing scam. *See United States v. Ciro Martinez, et. al.* 97-CR-807-DMM; *see also* PSR ¶ 28. He was sentenced to 12 months by Judge Middlebrooks. In 2002, less than a year into his supervised release, Marin again violated his release terms ordered by Judge Middlebrooks by driving under the influence (and was sentenced to 120 days home confinement). *See* PSR ¶¶ 28, 29.

### Marin's Role in the Rothstein Ponzi

After 10 years without any known convictions, Marin turned to white collar fraud. In 2012, Marin pleaded guilty to conspiring to obstruct justice with disgraced attorney Scott Rothstein by hiding certain fruits of Rothstein's massive Ponzi scheme that were subject to an order of forfeiture. *See United States v. Marin*, 12-CR-60205-KAM. Specifically, Marin admitted to fencing expensive jewelry that Rothstein purchased with money from the fraud so that the Government could not forfeit the assets. *Id*. at DE76. As Marin admitted in his factual basis, he testified falsely under oath in a federal bankruptcy proceeding that he never saw a 12.08 carat

diamond that he attempted to fence for Rothstein. At his 2014 sentencing, Marin reportedly told District Court Judge Marra: "I'm asking you for mercy, please. I know I did a lot of things bad. I paid my price. I promise you I will never be in front of you again for any reason."[1] Judge Marra sentenced Marin to ten months. *Id*. at DE76.

### Marin's Securities Fraud

Little did Judge Marra know, Marin was busy committing securities fraud at the same time he was begging the court for a lenient sentence and lying about having paid his price for committing crimes. In 2018, Marin was charged again in our district in a pump and dump stock fraud scheme that began in November 2013 and ended in April 2016. Marin was committed securities fraud while on pretrial release in Judge Marra's case and continued to do so while he was incarcerated and then out on supervised release. *See United States v. Marin*, 18-CR-20354-DPG. In other words, Marin was undeterred by Judge Marra's 10-month sentence, despite promising the court that he had learned his lesson.

In June 2018, Marin pleaded guilty to the stock swindle before Judge Gayles. At the change of plea, Judge Gayles informed Marin of the date of his sentencing and allowed Marin to remain out on bond pending his sentencing set for August 23, 2018. *Id*. at DE10. After his change of plea, Marin tested positive cocaine. The Government moved to revoke Marin's bond and the matter was set for a hearing on July 23, 2018. *Id*. at DE13. On July 17, 2018, Marin called the FBI agent assigned to the case, tried to explain his cocaine use, stated that he wanted to remain on bond pending his August 23, 2018 sentencing, and reiterated that he would continue to

---

[1] As quoted in: "New Charges for Man Convicted of Helping Hide Scott Rothstein's Assets," Sun Sentinel, May 2, 2018, at A1, located at http://www.sun-sentinel.com/local/broward/fl-reg-marin-federal-charges-20180502-story.html.

cooperate with the Government.[2]  On July 20, 2018, Marin called the FBI agent again and asked to speak to the assigned AUSA before the court hearing on Monday (referring to the hearing on the motion to revoke bond), but the FBI agent told Marin to have is attorney reach out to the assigned AUSA.

Marin never showed for the July 23, 2018 hearing on his motion to revoke bond and Judge Gayles issued a warrant for Marin's arrest.  In September 2018, District Court Judge Gayles sentenced Marin, still a fugitive, to 210 months.[3]  Judge Gayles specifically noted on the record at sentencing that he informed Marin of his original August 23, 2018 sentencing date at his change of plea.  *Id*. at DE26:6.

### The Instant Charges

On September 27, 2018, Marin was indicted for failure to appear, in violation of 18 U.S.C. § 3146, and contempt of court, in violation of 18 U.S.C. § 401(3), and a warrant for Marin's arrest was issued in this case.  On October 1, 2018, the Court transferred the case to fugitive status when Marin failed to make his initial appearance.  From the time Marin failed to appear at his bond hearing on July 23, 2018, until he was ultimately apprehended at an apartment in Fort Lauderdale on October 13, 2020, the U.S. Marshals Service and FBI took a number of steps to apprehend Marin.  Tips about Marin's whereabouts led law enforcement to inspect residences in Key Largo, Fort Lauderdale, and Hialeah (where Marin's mother resides).  Marin's apprehension also involved the Courts – the Government sought, and received: two pen registers, a tracking warrant,

---

[2] This interview report was provided to counsel for Marin and U.S. Probation.

[3] Marin received a sentence at the top of the Guidelines for his securities fraud offense (204 months) and then a consecutive 6 months pursuant to 18 U.S.C. § 3147 because Marin committed the offense while out on release in the case before Judge Marra.

and a triggerfish that ultimately led the U.S. Marshals to Marin, who was hiding in an apartment in Fort Lauderdale.

In addition, Marin was nearly arrested by a Coral Gables Police Department officer who pulled him over in a traffic stop on April 22, 2019, which would cut the time the Government spent searching for him in half, but Marin fled the scene and was not apprehended. *See* PSR ¶ 10. According a Coral Gables Police Department report, an officer pulled over a rental Jeep Wrangler at the 200 block of Menores Ave, Coral Gables, FL 33134, for a stop sign infraction. The officer approached the vehicle after it stopped, and encountered a male driver, a female passenger, and a child in the rear passenger seat. The officer asked the male driver for his license and the male driver stated that his license was suspended. The officer asked the male driver for his name, date of birth and home address. The driver stated his name was Pedro Martinez, DOB: 03/26/1969, and a home address in Fort Lauderdale. The officer returned to his patrol vehicle to conduct a records check to verify the driver's information. The officer was unable to verify the information produced by the male driver. The officer returned to the vehicle and the male driver was no longer there. The officer questioned the female passenger, who identified herself as O.C. (Marin's girlfriend) and the child as having the last name Marin. The officer found a common address between O.C. and Marin. The officer then conducted a records check on Marin and identified Marin as the male driver that fled the vehicle based on his photograph.

On September 1, 2021, Marin pleaded guilty to the contempt charge.

**<u>Marin's Guidelines in the Instant Case</u>**

The parties agree that Marin's base level offense for the contempt charge is 11, pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 2J1.6, and that Marin

gets a two-level reduction for acceptance of responsibility.[4] *See* PSR ¶ 15. With a criminal history category at a Level 4 (based on 8 criminal history points)[5], Marin's Guidelines range for the contempt charge is 18 to 24 months.

## SENTENCING PRINCIPLES

## 18 U.S.C. § 3553(a)

The 18 U.S.C. § 3553(a) factors compel a sentence of at least 48 months' imprisonment for Marin. Although we will address the other 18 U.S.C. § 3553(a) factors that appear in the statute, we believe that the Court should place particular emphasis on three factors: the history and characteristic of this defendant, respect for the law, and the need for deterrence. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (stressing that the sentencing court "is permitted to attach great weight to one factor over others" and adding that the "decision about how much weight to assign a particular sentencing factor [is] committed to the sound discretion of the district court.") (internal citations omitted). It is those factors above all that set Marin apart from other defendants in this district and justify a 48-month sentence.

---

[4] Although the Government reserved the right to argue for the application of an enhancement for obstruction of justice pursuant to Section 3C.1.1 of the Guidelines, based on Marin's flight from the Coral Gables Police Department, Application Note 7 of this section states that an obstruction enhancement can only be applied to a contempt change if "a significant further obstruction occurred." While this conduct could be considered a significant further enhancement, the Court should consider his flight as relevant conduct supportive of an upward variance from the Guidelines, as explained more fully below.

[5] The PSR incorrectly stated that Marin had 9 criminal history points, mistakenly scoring 3 points for Marin's conviction in the Judge Marra case instead of 2 points – that sentence was only 10 months. The undersigned notified U.S. Probation and they agree. The error does not affect the Guidelines or Marin's criminal history calculation.

## THE STATUTORY FACTORS

**A.  The nature and circumstances of Marin's offense.**

The Court is well-aware of the seriousness of a Marin's conduct, a knowing decision to violate his bond in the Judge Gayles case and disregard Judge Gayles' instructions to report for his sentencing. Marin's conduct was the epitome of contempt. In addition, Marin's conduct drained the resources of the law enforcement personnel who searched for him and the Courts that signed the various tracking applications and warrants. The fact that a contempt charge carries no statutory maximum demonstrates just how serious Congress views this crime. The Guidelines range therefore understates the seriousness of this offense.

**B.  The history and characteristics of Marin.**

Marin, a career criminal, got his start with small drug crimes, evolved into a white-collar criminal, and was most recently living as a fugitive in the district before his capture in this case. To call him an unrepentant criminal is an understatement. He appears have had little in the way of legitimate employment over the last twenty years and refused to describe to U.S. Probation how he supported himself while a fugitive for the past two years on the grounds that his response might incriminate him. *See* PSR ¶ 68. Further, Marin has shown a lengthy history of disregarding orders from members of the judiciary in this district. From supervised released violations, to the lies he told Judge Marra, to his recent disregard for Judge Gayles' order, Marin has showed a repeated unwillingness to follow orders in this district. Further, with respect to his criminal history for this crime, Marin is getting a pass on his federal drug and check cashing cases (and

supervised release violations) because the conduct is now old. The criminal history and characteristic of this defendant support a serious sentence.

### C. Marin's sentence must promote respect for the law.

Marin's criminal activities, repeated supervised release violations, and recent flight demonstrate that he has no respect for the law or his obligation to tell the truth to a federal judge.

First, begging Judge Marra for leniency during an obstruction of justice sentencing while simultaneously committing securities fraud is as disrespectful to the courts as it is shameful. It also begs the question of whether Marin is still committing crimes in while in jail like he did when he was sentenced by Judge Marra.

Second, while Marin's history of crime shows a lack of respect for the United Stated District Court, so does his decision to disregard Judge Gayles' order setting his case for a bond revocation hearing and then sentencing.

Third, on top of flouting the authority of this court, Marin provided a false name and then fled from the Coral Gables Police Department to avoid serving his lengthy prison sentence.

For these reasons, Marin deserves a serious sentence to promote his respect for the law, something he has failed to show over the past twenty years.

### D. Marin must be deterred.

Nothing short of a lengthy prison sentence will prevent Marin from engaging in criminal conduct. Marin is currently 59-years-old and serving a roughly 17-year sentence, meaning he will likely be released on the sentence from Judge Gayles when he is in his mid-70's. While a violent criminal might be less of a risk of recidivism at this age, a white-collar criminal could find himself in his prime. Just recently, District Judge Altman sentenced a series of defendants in their mid-70's for their roles in a massive Ponzi scheme. *United States v. Andrew Dale Ledbetter*, No. 20-

CR-60103 (79-years-old, received a 60-month sentence); *United States v. Jan Douglas Atlas*, No. 19-60258-CR-RKA (76-years-old, received an 8-month sentence); *United States v. Steven Allen Schwartz*, No. 20-CR-60003 (76-years-old, received a 24-month sentence). Here, Marin has shown a willingness to lie and continue to commit crimes even while under the supervision of the United States District Court. It would not take much for Marin, at any age, to pick up a phone in a boiler room and pitch a fraudulent investment to unwitting investors who are also in their 70's or 80's. A sentence that ensures Marin remains in prison for nearly all his life is warranted here. The odds of him suddenly turning around and deciding the law and the words of District Court judges means something, after five felonies in this district alone, are slim to non-existent.

Further, as a matter of general deterrence, it would send the wrong message to defendants who do show up for surrender dates and court hearings if the punishment for Marin is light. Some might find the risk of flight worth it, knowing a lenient punishment is on the other side if they get caught. A message must be sent to other defendants in this district that it doesn't pay to flee.

   **E. Just punishment for this offense.**

A sentence less than the 48 months, twice the time Marin was on the run, would be unjust given that: (a) he has blown through multiple "second chances" to stop living a life of crime; (b) the Government had to waste 24 months searching for him; and (c) he has shown repeated disrespect for the United States District Court in the Southern District of Florida by violating supervised release and fleeing before his sentencing.

   **F. The applicable Sentencing Guidelines and unwarranted disparities.**

Unfortunately, bond jumpers are not uncommon in this district and others. And a sentence of 48 months is certainly within the bounds of how similar defendants in this district have been treated, even those without the virtually unmatched criminal history of Marin. For example,

Judge Moreno sentenced a woman to 24 months for fleeing for 6 years after her change of plea before Judge Cooke, a slight upward variance from her Guidelines range of 15 to 21 months, who was a mere criminal history category 2. *See United States v. Juana Baez Paulino*, 13-CR-20272-FAM (Judge Cooke originally sentenced the defendant in absentia to 25 months for passport fraud and aggravated identity theft); *see also United States v. Carmen Gonzalez*, 08-CR-20652-FAM (sentencing defendant who had been a fugitive for 5 years to 24 months imprisonment for failure to appear, to be served consecutively to 84-month sentence for health care fraud). This Court has given a consecutive sentence to less culpable defendants who fled. *See United States v. Carlos Luis Arado Gonzalez*, 17-CR-20185-RNS (sentencing defendant who had been a fugitive for 1 year to 14 months imprisonment for failure to appear, to be served consecutively to 57-month sentence for alien smuggling and failure to heave).

None of these defendants have had the extreme prior criminal history of Marin and therefore a sentence of 48 months is warranted here.

## **CONCLUSION**

Marin's conduct is deserving of an upward variance for his most recent affront to the integrity of the judiciary based on his lengthy criminal record (some of which was unaccounted for in his criminal history), his demonstrated unwillingness to follow orders in the Southern District of Florida when he is not incarcerated, and his well-honed criminal skillset that will allow him to commit white collar crimes at any age.

|  |  |  |
|---|---|---|
|  | Respectfully submitted, |  |
|  | JUAN ANTONIO GONZALEZ<br>ACTING UNITED STATES ATTORNEY |  |
| October 14, 2021 | By: | /s/ Elizabeth Young<br>ELIZABETH YOUNG<br>Court ID No. A5501858<br>Assistant United States Attorney<br>Elizabeth.Young@usdoj.gov<br>United States Attorney's Office<br>99 Northeast 4th Street<br>Miami, Florida 33132-2111<br>Tel: (786) 761-3153 |